Case 5:25-cv-00433-GAP-RRJ    Document 1-3    Filed 07/10/25    Page 1 of 32 PageID 18

35-2025-CA-001424-AXXX-01

**FORM 1.997.    CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

### I.    CASE STYLE

IN THE CIRCUIT/COUNTY COURT OF THE <u>FIFTH</u>  JUDICIAL CIRCUIT,
IN AND FOR <u>LAKE</u>  COUNTY, FLORIDA

<u>JUDITH FIKE</u>
Plaintiff

Case # _____
Judge _____

vs.

<u>CITY OF GROVELAND</u>
Defendant

### II.    AMOUNT OF CLAIM

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐  $8,000 or less
☐  $8,001 - $30,000
☐  $30,001- $50,000
☐  $50,001- $75,000
☐  $75,001 - $100,000
☒  over $100,000.00

### III.    TYPE OF CASE    (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

**CIRCUIT CIVIL**

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
    ☐ Business governance
    ☐ Business torts
    ☐ Environmental/Toxic tort
    ☐ Third party indemnification
    ☐ Construction defect
    ☐ Mass tort
    ☐ Negligent security
    ☐ Nursing home negligence
    ☐ Premises liability—commercial
    ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
    ☐ Commercial foreclosure
    ☐ Homestead residential foreclosure
    ☐ Non-homestead residential foreclosure
    ☐ Other real property actions

☐Professional malpractice
    ☐ Malpractice—business
    ☐ Malpractice—medical
    ☐ Malpractice—other professional
☒ Other
    ☐ Antitrust/Trade regulation
    ☐ Business transactions
    ☒ Constitutional challenge—statute or ordinance
    ☐ Constitutional challenge—proposed amendment
    ☐ Corporate trusts
    ☐ Discrimination—employment or other
    ☐ Insurance claims
    ☐ Intellectual property
    ☐ Libel/Slander
    ☐ Shareholder derivative action
    ☐ Securities litigation
    ☐ Trade secrets
    ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

**IV.    REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☒ Nonmonetary declaratory or injunctive relief;
☒ Punitive

**V.    NUMBER OF CAUSES OF ACTION:** [  ]
(Specify)

  <u>5</u>

**VI.    IS THIS CASE A CLASS ACTION LAWSUIT?**
    ☐ yes
    ☒ no

**VII.    HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
    ☒ no
    ☐ yes If "yes," list all related cases by name, case number, and court.

**VIII.    IS JURY TRIAL DEMANDED IN COMPLAINT?**
    ☒ yes
    ☐ no

**IX.    DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
    ☐ yes
    ☒ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: <u>s/ Anthony Frank Sabatini</u>      Fla. Bar # <u>1018163</u>
      Attorney or party               (Bar # if attorney)

<u>Anthony Frank Sabatini     </u>        <u>07/08/2025</u>
 (type or print name)           Date



**GARY J. COONEY**

CLERK OF THE CIRCUIT COURT AND COMPTROLLER

P O BOX 7800, 550 WEST MAIN STREET, TAVARES, FL 32778

**RECEIPT**

3062563

Printed On:
07/08/2025 04:30
Page 1 of 1

| Receipt Number: 3062563 - Date 07/08/2025  Time 4:30PM | |
|---|---|
| **Received of:** | Anthony Frank Sabatini<br>726 CALABRIA WAY<br>HOWEY IN THE HILLS, FL 34737 |

| **Cashier Name:** | efiling | **Balance Owed:** | 400.00 |
|---|---|---|---|
| **Cashier Location:** | E-Filing | **Total Amount Paid:** | 400.00 |
| **Receipt ID:** | 2726922 | **Remaining Balance:** | 0.00 |
| **Division:** | | | |

| Case# 35-2025-CA-001424-AXXX-01 -- Plaintiff: FIKE, JUDITH | | | |
|---|---|---|---|
| Item | Balance | Paid | Bal Remaining |
| Fees | 400.00 | 400.00 | 0.00 |
| **Case Total** | **400.00** | **400.00** | **0.00** |

| Payments | | |
|---|---|---|
| **Type** | **Ref#** | **Amount** |
| eFiling Credit Card | 15609835 | **400.00** |
| **Total Received** | | **400.00** |
| **Total Paid** | | **400.00** |

**IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
IN AND FOR LAKE COUNTY, FLORIDA**

JUDITH FIKE, a City Councilmember,
    Plaintiff,

v.                                CASE NO.:  2025-CA-1424

CITY OF GROVELAND, a political
sub-division of the State of Florida,
    Defendant.
_____/

## SUMMONS

THE STATE OF FLORIDA:
To Each Sheriff of the State:

YOU ARE COMMANDED to serve this summons and a copy of the complaint in this action on defendant:

CITY OF GROVELAND
C/O CITY MANAGER or MAYOR
156 S Lake Ave
Groveland, FL 34736

Each defendant is required to serve an answer to the complaint on ANTHONY SABATINI, plaintiff's attorney, whose address is SABATINI LAW FIRM P.A., 411 N DONNELLY ST, STE 313, MOUNT DORA, FL 32757, within 20 days after service of this summons on that defendant, exclusive of the day of service, Saturday, Sunday and legal holidays, and to file the original of the answer with the clerk of this court either before service on plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint.

DATED on:_____
Clerk of the Court

By:_____
As Deputy Clerk

1



# RECEIPT
3062735

## GARY J. COONEY

CLERK OF THE CIRCUIT COURT AND COMPTROLLER
P O BOX 7800, 550 WEST MAIN STREET, TAVARES, FL  32778

Printed On:
07/09/2025 10:17
Page 1 of 1

| Receipt Number: 3062735 - Date 07/09/2025  Time 10:17AM | | | | |
|---|---|---|---|---|
| **Received of:** | Anthony Frank Sabatini<br>726 CALABRIA WAY<br>HOWEY IN THE HILLS, FL 34737 | | | |
| **Cashier Name:** | efiling | **Balance Owed:** | | 10.00 |
| **Cashier Location:** | E-Filing | **Total Amount Paid:** | | 10.00 |
| **Receipt ID:** | 2727104 | **Remaining Balance:** | | 0.00 |
| **Division:** | | | | |

| Case# 35-2025-CA-001424-AXXX-01 -- Plaintiff: FIKE, JUDITH | | | |
|---|---|---|---|
| Item | Balance | Paid | Bal Remaining |
| Fees | 10.00 | 10.00 | 0.00 |
| **Case Total** | **10.00** | **10.00** | **0.00** |

| Payments | | |
|---|---|---|
| **Type** | **Ref#** | **Amount** |
| eFiling Credit Card | 15611201 | **10.00** |
| **Total Received** | | **10.00** |
| **Total Paid** | | **10.00** |

**IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
IN AND FOR LAKE COUNTY, FLORIDA**

JUDITH FIKE, a City Councilmember,
    Plaintiff,

v.                             CASE NO.:  2025-CA-1424

CITY OF GROVELAND, a political
sub-division of the State of Florida,
    Defendant.

_____/

<u>**SUMMONS**</u>

THE STATE OF FLORIDA:
To Each Sheriff of the State:

YOU ARE COMMANDED to serve this summons and a copy of the complaint in this action on defendant:

CITY OF GROVELAND
C/O CITY MANAGER or MAYOR
156 S Lake Ave
Groveland, FL 34736

Each defendant is required to serve an answer to the complaint on ANTHONY SABATINI, plaintiff's attorney, whose address is SABATINI LAW FIRM P.A., 411 N DONNELLY ST, STE 313, MOUNT DORA, FL 32757, within 20 days after service of this summons on that defendant, exclusive of the day of service, Saturday, Sunday and legal holidays, and to file the original of the answer with the clerk of this court either before service on plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint.

DATED on:___07/09/2025___
Clerk of the Court

By:___*K. Linares*___
As Deputy Clerk

1

Case 5:25-cv-00433-GAP-RBJ    Document 1-3    Filed 07/10/25    Page 8 of 32 PageID 25

**IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
IN AND FOR LAKE COUNTY, FLORIDA**

JUDITH FIKE, a City Councilmember,
    Plaintiff,

v.                         CASE NO.:  2025-CA-1424

CITY OF GROVELAND, a political
sub-division of the State of Florida,
    Defendant.
_____/

## <u>VERIFIED MOTION FOR PRELIMINARY INJUNCTION</u>

Plaintiff, JUDITH FIKE, pursuant to Rule 1.610 of the Florida Rules of Civil

Procedure, and Article I, Section 4 of the Constitution of the State of Florida, moves this

Court for a preliminary injunction against Defendant*,* City of Groveland, and states:

### I. PARTIES, JURISDICTION & VENUE

1.    Plaintiff Ms. Fike is a member of the Groveland City Council District Four. Her

current term began in October 2024 and is scheduled to expire in November 2025.

2.    She resides in the City of Groveland within Lake County, Florida.

3.    Defendant. The City of Groveland is a Florida municipal corporation located in

Lake County and is subject to its Charter and the laws and Constitution of the State of

Florida.

4.    This Court has subject-matter jurisdiction under Article V, Section 20 of the

Florida Constitution and Section 26.012, Fla. Stat.

5.    Venue lies in Lake County because the causes of action accrued here, and the

City is located here.

### II. FACTS

6.    On July 7, 2025, at a meeting of the Groveland City Council , the Groveland

1

Council, without legal authority from either their ethics policy or Charter, voted 3-1 to "suspend" District 4 Councilmember Fike and remove her the meeting.

7.      The Mayor then further directed the Groveland Police Chief to remove Councilmember Fike from the meeting and prohibit her from returning.

7.      The removal came without prior notice, charges, or a hearing, or any semblance of due process.

8.      Most importantly, the suspension was wholly without authority from either a Groveland City Charter, **EXHIBIT A**, or a city Ethics Policy, **EXHIBIT B**. Neither provide the Council authority to remove their own members or suspend them.  The ethics guide only grants the city authority to remove advisory board members for various advisory board committees.

9.      The Groveland Charter provisions of greatest importance to this matter are Section 3.06. **EXHIBIT A.**

10.     Section 3.06 of the Groveland City Charter governs "Vacancies; forfeiture of office; filling of vacancies."

11.     Subsection (a) lists four events that create a vacancy: *death, resignation, removal "in any manner authorized by law," or forfeiture*.

12.     Subsection (b) defines forfeiture narrowly as "loss of legal qualifications"; subsection (c) addresses absenteeism; subsection (d) prescribes how a vacancy is filled.

13.     Nowhere in § 3.06—or anywhere else in the Charter is the Council given authority to remove a sitting member, initiate charges, or conduct a removal hearing. **EXHIBIT A**.

2

14.     This was an ultra vires action. The Mayor invoked an employee ethics policy in a desperate attempt to cling to some thread of legitimacy for the suspension.

15.     Even the Ethics Policy referenced for justification does not give the council the authority to suspend a member. The portion of the ethics policy that applies to discipline is below, and the full policy is attached as **EXHIBIT B**

> "(c)…Councilmembers: <u>Councilmembers who intentionally and/or repeatedly do not follow proper conduct may be reprimanded or formally censured by the Council, lose seniority or committee assignments</u> (both within the City of Groveland and with intergovernmental agencies), or other privileges afforded by the Council. Serious infractions of the Code of Ethics or Code of Conduct could lead to other sanctions as deemed appropriate by the Council, as set forth in the Charter." (emphasis added)

16.     <u>Nowhere in the plain language of the ethics policy or the City Charter does it reference an authority for the council to suspend a council member</u>, including their voting rights.

17.     Even if the Ethics Policy is valid law, which is unlikely because it conflicts with the Charter, it does not provide the Council authority to remove a council member, only lower advisory boards and commissions. At most, it gives the ability to formally censure or sanction Councilwoman Fike; it clearly had no authority to suspend.

18.     Nor did the Council in their action invoke any state-law removal process, i.e., gubernatorial suspension under art. IV, § 7, Fla. Const.

19.     Additionally, this was also a clear due-process violation. Ms. Fike received no written notice, no statement of charges, no opportunity to be heard, no counsel, and no

3

public evidentiary hearing.

20.    This illegal suspension deprived Plaintiff of her elected office. The Council voted on at least eight agenda items, including budget amendments, after Councilmember Fikes' illegal suspension.

21.    This all occurred without even the pretext of procedural safeguards required by Fla. Const. art. I, §§ 9. One Council member calling into the meeting wasn't even given the opportunity to vote after previously voicing concerns about the process.

22.     Plaintiff is currently denied entry to City Hall and blocked from voting or any other rights of her elected office. This suspension is similar to the authority given to the Governor under Florida Statutes, but the Council, in this case, chose to bestow on themselves such authority in direct contradiction to the City Charter.

23.    Each Council meeting held without Ms. Fike perpetuates irreparable harm to her vested right to serve and her constituents' right to representation, injuries that money damages cannot remedy.

## III. LEGAL STANDARD AND GROUNDS FOR INJUNCTION

24.    To obtain a temporary injunction, the movant must plead and establish:

A. A likelihood of irreparable harm and the unavailability of an adequate remedy at law;
B. A substantial likelihood of success on the merits;
C. That the threatened injury to the petitioner outweighs any potential harm to the respondent; and
D. That the injunction will not disserve the public interest.
*Reliance Wholesale, Inc. v. Godfrey*, 51 So. 3d 561, 564 (Fla. 3d DCA 2010).

25.    Irreparable harm and inadequate remedy. The unlawful ouster from elective office is per se irreparable, and no monetary relief can restore Ms. Fike's right or her constituents' right to full representation.

4

26.    Substantial likelihood of success. The Council acted ultra vires: Nowhere in the Charter does it authorize members to remove a colleague (§ 3.06 contains no removal procedure for the council outside of strict qualifications.

27.    Ms. Fike is likely to prevail on her declaratory and injunctive claims. In balancing the equities, the threatened constitutional and statutory injuries to Ms. Fike and the electorate far outweigh any conceivable inconvenience to the City in simply following its Charter and state law.

28.    Public interest. Upholding due-process guarantees and the City Charter serves the public interest; an injunction will preserve democratic governance and voter choice.

29.    Bond. Because the relief protects constitutional rights, the Court should waive bond or set it at a nominal $100. Fla. R. Civ. P. 1.610(b).

30.    Ongoing Council meetings without Ms. Fike aggravate irreparable harm; immediate relief is warranted.

## IV. RELIEF REQUESTED

Plaintiff respectfully asks the Court to:

A. Issue a Preliminary Injunction restraining the City from further action and

B. Order the City to restore and recognize Ms. Fike as the lawful Councilmember pending final judgment;

C. Set an expedited evidentiary hearing;

D. Grant further relief as justice requires.


**DATED**: July 9, 2025.

## <u>VERIFICATION</u>

Under penalties of perjury, I declare that I have read the forgoing document and that the

5

facts are true to the best of my knowledge and belief.

*/s/ JUDITH FIKE*

**DATED**: July 9, 2025.

Respectfully submitted,

*/s/ Anthony F. Sabatini*
ANTHONY F. SABATINI, ESQ.
FL BAR No. 1018163
SABATINI LAW FIRM, P.A.
411 N DONNELLY ST, STE #313
MOUNT DORA, FL 32757
T: (352)-455-2928
anthony@sabatinilegal.com
Attorney for Plaintiffs

6

# PART I
# CHARTER[1]

## PREAMBLE

We the people of the City of Groveland, Florida, under the constitution and laws of the United States of America and the State of Florida, do hereby adopt this charter to define the powers and structure of our council-manager form of government. By this action, we secure the benefits of local self-government and affirm the values of representative democracy, professional management, strong political leadership, citizen participation, and regional cooperation. We believe in an open, responsive government that abides by the highest ethical standards and operates as a careful steward of the human, fiscal, and natural resources of our city.

## ARTICLE I. CREATION AND POWERS

### Sec. 1.01. Creation and powers.

The City of Groveland, Lake County, Florida, is hereby created which shall have all governmental, corporate and proprietary powers to enable it to conduct municipal government, perform municipal functions and render municipal services, and may exercise any power for municipal purposes except as otherwise provided by law.

## ARTICLE II. CORPORATE LIMITS

### Sec. 2.01. Description of corporate limits.

A description of the corporate limits of the city is on file in the office of the city clerk.

## ARTICLE III. LEGISLATIVE

---

[1]Editor's note(s)—An election held November 3, 2020, approved amendments revising former Charter §§ 1.01, 2.01, 3.01—3.07, 4.01—4.04, 5.01—5.05, and 6.01—6.03. See the Charter Comparative Table for a complete derivation. Obvious misspellings have been corrected without notation. For stylistic purposes, headings and catchlines (and punctuation therein) have been made uniform. Capitalization and expression of numbers in text have been made consistent with the scheme of the document. Additions for clarity are indicated by brackets.

State law reference(s)—Charter amendments, F.S. § 166.031.

Groveland, Florida, Code of Ordinances
(Supp. No. 16)

Created: 2025-02-11 11:19:40 [EST]

Page 1 of 8

## Sec. 3.01. City council: Powers and composition.

There shall be a city council with all legislative powers of the city vested therein consisting of five (5) members who shall be electors of the city.

(Election of 11-3-2020)

## Sec. 3.02. Qualifications.

Any registered elector of the City of Groveland who has established primary residency within the City limits twenty-four months prior to the first day of the qualifying period shall be eligible to seek qualification for the elected office of city councilmember. Primary residency shall mean the dwelling, in which the person eats, sleeps and receives regular postal delivery.

(Election of 11-3-2020)

## Sec. 3.03. Election and terms.

The regular election of city councilmembers shall be held on the first Tuesday after the first Monday of November. Councilmembers shall be elected to one of five seats with one of the five seats being reserved for the mayor. The mayor shall be elected on a city wide basis by the electors of the City of Groveland and is not required to reside in a particular political district. There shall be four city council political districts as nearly equal in population as practicable. There shall be four councilmembers one for each of the four city council political districts established and they shall be elected by district by the voters in that district. At the time of qualifying or appointment the city council candidate must reside in the political district in which he or she seeks to hold office, except that if no one qualifies for or seeks appointment for a political district, then the seat for that term and political district may be filled in accordance with Article III, Section 3.06 by a resident not residing in that political district. Each councilmember, except as otherwise provided in this Section 3.03, shall reside in the political district for which he or she qualifies at the time of election and throughout the term of office, provided that any councilmember who is removed from a district by redistricting may continue to serve the balance of the term of office. The boundaries of the four political districts shall be as shown on the map attached as Exhibit "A" and made a part hereof. However, the city council may by ordinance adopted by a majority vote of the councilmembers change the boundaries of the districts from time to time in accordance with law. Three councilmembers shall be elected at the general election held on the first Tuesday following the first Monday of November in even-numbered years. The councilmembers shall be qualified and entered upon the ballot as Districts (1), (3) and (5). Of these districts, District 1 shall be that seat reserved for the mayoral candidate and the person elected to District 1 shall serve as mayor for a two-year term. He or she shall be a member of the council and will preside over the meeting of the council. There shall be elected at the general election held on the first Tuesday following the first Monday of November in odd-numbered years two councilmembers and candidates for such offices shall be designated as candidates from Districts (2) and (4) and shall be elected for a two-year term. Each candidate for city council may qualify in one District only and at all subsequent elections candidates or councilmembers shall be elected for a two-year term. All councilmembers, including the mayor, shall be elected to begin office at the first regular city council meeting following their election.

In the event there are more than two candidates who qualify for any one seat, there shall be a primary election held concurrently with the statewide primary election provided for in § 100.061, Florida Statutes, as may be amended from time to time, or as set forth by the city council. The two candidates for whom the highest number of votes are cast shall stand for election at the general election. As a result, a prevailing candidate at a general election must receive more than fifty percent of the votes cast.

(Election of 11-3-2020; Ord. No. 2021-19, § 2, election of 11-2-2021)

Created: 2025-02-11 11:19:39 [EST]

(Supp. No. 16)

### Sec. 3.04. Duties of mayor and election of vice-mayor.

The mayor shall preside at meetings of the council and shall be a member of the council and shall be recognized as head of city government for all ceremonial purposes, by the governor for purposes of military law; for service of process; execution of contracts, deeds and other documents and as the city official designated to represent the city in all agreements with other entities. The mayor shall have no other administrative duties except as required to carry out the responsibilities herein. At the first council meeting after each regular city election, the council shall elect one of its members as a vice-mayor. The vice-mayor shall act as mayor during the absence or disability of the mayor. In case of the death, resignation, or removal of the mayor, the vice-mayor shall vacate the office of councilmember and serve as mayor for the remainder of the unexpired term.

(Election of 11-3-2020)

### Sec. 3.05. Limitations.

(a)  *Appointment and removal.* Neither the council nor any of its members shall in any manner dictate the appointment or removal of any city officer or employee whom the manager or any of the manager's subordinates are empowered to appoint, but the council may express its views and fully and freely discuss with the manager anything pertaining to appointment and removal of such officers and employees. Appointment and removal of department heads and other employees shall be by the city manager who will advise councilmembers in writing of this action within seventy-two (72) hours.

(b)  *Interference with administration.* Except for the purpose of inquiries and investigations, the council or its members shall deal with city officers and employees who are subject to the direction and supervision of the manager solely through the manager; neither the council nor its members shall give orders to any such officer or employee, either publicly or privately. Nothing in the foregoing is to be construed to prohibit individual members of the council from closely scrutinizing by personal observation, all aspects of city government operations so as to obtain independent information in the formulation of sound policies to be considered by the council. It is the express intent of this Charter, however, that recommendations for improvement in city government operations by individual councilmembers be made to and through the city manager, so that the manager may coordinate efforts of all city departments to achieve the greatest possible savings through the most efficient and sound means available.

(c)  *Holding other office.* No former elected city official shall hold any compensated, appointive city office or employment until one (1) year after the expiration of the term for which he or she was elected.

(Election of 11-3-2020)

### Sec. 3.06. Vacancies; forfeiture of office; filling of vacancies.

(a)  *Vacancies.* The office of a councilmember shall become vacant upon the member's death, resignation, removal from office or any manner authorized by law or forfeiture of office, such forfeiture to be declared by the remaining members of the council.

(b)  *Forfeiture of office.* A councilmember shall forfeit that office if the councilmember lacks at any time during the term of office any qualification for the office prescribed by this Charter or law.

(c)  *Absenteeism.* A councilmember shall forfeit that office if the member fails to attend four (4) consecutive regular meetings of the council without being excused by the council.

(d)  *Filling of vacancies.* A vacancy in the council shall be filled by a majority vote of the remaining council members appointing a successor to serve the unexpired term.

Notwithstanding any quorum requirements established herein, if at any time the membership of the council is reduced to less than a quorum, the remaining members may by majority vote appoint additional members in the manner provided above.

(e)  *Extraordinary vacancies.* In the event that all members of the council are removed by death, disability, law or forfeiture of office, the governor shall appoint an interim council that shall serve until the next regular city election. If the next regular city election occurs in an even-numbered year, then three councilmembers, Districts (1), (3) and (5) shall be elected to serve a two-year term, and two councilmembers, Districts (2) and (4) shall be elected to serve an initial one-year term. If the next regular city election occurs in an odd-numbered year, then two councilmembers, Districts (2) and (4) shall be elected to serve in a two-year term, and three councilmembers, Districts (1), (3) and (5) shall be elected to serve an initial one-year term.

(Election of 11-3-2020)

## Sec. 3.07. Procedure.

(a)  *Meetings.* The council shall meet regularly twice monthly at such time and places as the council may prescribe by rule. Special meetings may be held on the call of the mayor or of a majority of the members and, whenever practicable, upon no less than twenty-four (24) hours' notice to each member and the public.

(b)  *Rules and minutes.* The council shall determine its own rules and order of business and shall provide for the keeping of minutes of its proceedings.

(c)  *Voting.* Voting, on ordinances and resolutions, shall be by roll call vote on final action and shall be recorded in the minutes. A majority of the council shall constitute a quorum; but a smaller number may adjourn from time to time and may compel the attendance of absent members in the manner and subject to penalties prescribed by the rules of the council. No action of the council except as otherwise provided in the preceding sentence and in section 3.06 shall be valid or binding unless adopted by the affirmative vote of the majority of a quorum present.

(d)  *Compensation.* The council may determine the compensation of councilmembers by ordinance, but no ordinance increasing such compensation shall become effective until the next regular election.

(Election of 11-3-2020)

# ARTICLE IV. ADMINISTRATIVE

## Sec. 4.01. City manager.

The city manager shall be chief executive officer and head of the administrative branch of the city government. The city manager shall be responsible to the council for the proper administration of all affairs of the city and to that end, the manager shall have the authority and shall be required to carry out the responsibilities as spelled out in the following sections.

## Sec. 4.02. Appointment, removal, compensation.

(a)  *Appointment.* The council shall appoint a city manager for an indefinite term by a majority vote of all the councilmembers.

(b)  *Removal.* The council may remove the manager by a majority vote of all the councilmembers and, upon demand by the manager, a public hearing shall be held prior to a vote to remove the manager.

(c)    *Compensation.* The compensation of the manager shall be fixed from time to time by the council and shall not be reduced during the manager's tenure.

## Sec. 4.03. Acting city manager.

By letter filed with the council, the manager shall designate, subject to approval of the council, a qualified city administrative officer to exercise the powers and perform the duties of manager during the manager's temporary absence or disability. During such absences or disability, the council may revoke such designation at any time and appoint another officer of the city to serve until the manager shall return or the disability shall cease.

## Sec. 4.04. Authority and duties of the city manager.

(a)    The city manager shall appoint a city clerk, subject to approval by a majority vote of the council.

(b)    The city manager shall appoint, and when the manager deems it necessary for the good of the city, suspend or remove all city employees and appointive administrative officers provided for by or under this Charter except as otherwise provided by law, this Charter or personnel rules adopted pursuant to this Charter. The manager may authorize any administrative officer who is subject to the manager's direction and supervision to exercise these powers with respect to subordinates in that officer's department, office or agency.

(c)    Direct and supervise the administration of all departments, offices and agencies of the city, except as otherwise provided by this Charter or by law; create upon approval of the council by resolution, changes in any or all department organizations, including combinations, deletions, creation of departments, units or divisions, and transfer responsibilities between departments, units or divisions.

(d)    Attend all council meetings and shall have the right to take part in discussion but may not vote.

(e)    See that all laws, provisions of this Charter and acts of the council subject to enforcement by the city manager or by officers subject to the manager's direction and supervision, are faithfully executed.

(f)    Prepare and submit the annual budget, budget message, and capital program to the council in a form provided by ordinance.

(g)    Submit to the council and make available to the public a complete report on the finances and administrative activities of the city as of the end of each fiscal year.

(h)    Make such other reports as the council may require concerning the operations of city departments, offices and agencies, subject to the city manager's direction and supervision.

(i)    Keep the council fully advised as to the financial condition and future needs of the city and make such recommendations to the council concerning the affairs of the city as the manager deems desirable.

(j)    Sign contracts on behalf of the city pursuant to the provisions of appropriations ordinances.

(k)    Perform such other duties as are specified in this Charter or may be required by the council.

# ARTICLE V. FINANCIAL PROCEDURES

## Sec. 5.01. Fiscal year.

The fiscal year of the city shall begin October 1 of each year and end on September 30 of each year.

## Sec. 5.02. Budget.

The budget shall provide a complete financial plan of all city funds and activities for the ensuing fiscal year and, except as required by law or this Charter, shall be in such form as the manager deems desirable or the council may require. In organizing the budget, the manager shall utilize the most feasible combination of expenditure classifications by fund, organizational unit, program, purpose or activity and object. It shall begin with a clear, general summary of its contents; shall show in detail all estimated income, indicating the proposed property tax levy, and all proposed expenditures, including debt service, for the ensuing fiscal year; and shall be so arranged as to show comparative figures for actual and estimated income and expenditures of the current fiscal year and actual income and expenditures for the preceding fiscal year.

## Sec. 5.03. Council action on budget.

(a)  *Amendment before adoption.* The council may adopt the budget with or without amendment. In amending the budget, it may add or increase programs or amounts and may delete or decrease any programs or amounts, except expenditures required by law or for debt service or for estimated cash deficit, provided that no amendment to the budget shall increase the authorized expenditures to an amount greater than the total of estimated income.

(b)  *Adoption.* The council shall adopt the budget on or before September 30 of the fiscal year currently ending. If it fails to adopt the budget by this date, the amounts appropriated for current operations for the current fiscal year shall be deemed adopted for the ensuing fiscal year on a month-to-month basis, with all items in it prorated accordingly, until such time as the council adopts a budget for the ensuing fiscal year. Adoption of the budget shall constitute appropriations of the amounts specified therein as expenditures from the funds indicated and shall constitute a levy of the property tax therein proposed.

(c)  *Amendments after adoption.*

(1)  *Supplemental appropriations.* If during the fiscal year the manager certifies that there are available for appropriation revenues in excess of those estimated in the budget, the council by ordinance may make supplemental appropriations for the year up to the amount of such excess.

(2)  *Emergency appropriations.* To meet a public emergency affecting life, health, property or the public peace, the council may make emergency appropriations. Such appropriations may be made by emergency ordinance in accordance with the provisions established by law to the extent that there are no available unappropriated revenues to meet such appropriations. The council may by such emergency ordinance authorize the issuance of emergency notes, which may be renewed from time to time but the emergency notes and renewals of any fiscal year shall be paid not later than the last day of the fiscal year next succeeding that in which the emergency appropriation was made.

(3)  *Reduction of appropriations.* If at any time during the fiscal year it appears probable to the manager that the revenue available will be insufficient to meet the amount appropriated, the manager shall report to the council without delay, indicating the estimated amount of the deficit, any remedial action taken by the manager and the manager's recommendations as to any other steps to be taken. The council shall then take such further action as it deems necessary to prevent or minimize any deficit and for that purpose it may be required for the council to pass an ordinance to reduce one or more appropriations.

(d)  *Transfer of appropriations.*

(1)  [*Unencumbered appropriations.*] At any time during the fiscal year the finance director, with authorization of the manager, may transfer all or part of any unencumbered appropriation balance among programs within a department, office or agency. Upon written request by the manager, the

council may, by resolution, transfer part or all of any unencumbered appropriation balance from one department, office or agency to another department, office or agency.

(2) *Limitations; effective date.* No appropriation for debt service may be reduced or transferred, and no appropriation may be reduced below any amount required by law to be appropriated. The supplemental and emergency appropriations and reduction or transfer of appropriations authorized by this section may be made effective immediately upon adoption.

(3) *Payments and obligations prohibited.* No payment shall be made or obligation incurred against any allotment or appropriation unless the finance director certifies that there are sufficient funds available to cover the claim to meet the obligation when it becomes due and payable. No officer of the city other than the manager or the manager and the mayor in concert when required, may enter into any financial agreement with any other business or business person, on behalf of the city.

# ARTICLE VI. TRANSITION SCHEDULE

## Sec. 6.01. Continuation of former Charter provisions.

All provisions of Laws of Fla., ch. 9764 (1923), as amended by special law or otherwise which are not embraced herein and which are not inconsistent with this Charter shall become ordinances of the city subject to modifications or repeal in the same manner as other ordinances of the city.

## Sec. 6.02. Ordinances preserved.

All ordinances in effect upon the adoption of this Charter, to the extent not inconsistent with it, shall remain in force until repealed or changed as provided herein.

## Sec. 6.03. Rights of officers and employees.

Nothing in this Charter except as otherwise specifically provided shall affect or impair the rights or privileges of persons who are city officers or employees at the time of adoption. Elected officers shall continue to hold their offices and discharge the duties thereof until their successors are elected.

## Sec. 6.04. Pending matters.

All rights, claims, actions, orders, contracts and legal or administrative proceedings involving the city shall continue except as modified pursuant to the provisions of this Charter.

## Sec. 6.05. Time of taking full effect.

This Charter shall be in full effect for all purposes on the first day of January following approval in public referendum.

## Sec. 6.06. Severability

If any provision of this Charter is held invalid, the other provisions of the Charter shall not be affected. If the application of the Charter or any of its provisions to any person or circumstance is held invalid, the application of the Charter and its provisions to other persons or circumstances shall not be affected.

# CHARTER COMPARATIVE TABLE ORDINANCES

This table shows the location of the sections of amendments to the Charter. The charter was adopted by the council as Ordinance No. 87-09-04, on November 16, 1987, and approved at a referendum on December 9, 1987, by a 52/34 vote, and effective on January 1, 1988.

| Ordinance Number | Date | Section | Section in Charter |
|---|---|---|---|
| 2006-08-81 | 8-21-2006 | 2 | 3.02 |
| | 11- 7-2006 (Elect.) | | 3.02 |
| 2008-07-25 | 1-10-2009 | 2 | 3.03 |
| 2009-09-37 | 9- 9-2009 | 2 | 3.03 |
| | 11- 3-2009 (Elect.) | | 3.03 |
| 2018-08-19 | 8-20-2018 11- 6-2018 (Elect.) | 2 | 3.03 |
| 2018-08-22 | 8-20-2018 11- 6-2018 (Elect.) | 2 | 3.04 |
| 2018-08-23 | 8-20-2018 11- 6-2018 (Elect.) | 2 Added | Preamble |
| 2020-26 | 7-27-2020 11-3-2020(Elect.) | 2 | 3.06(d) |
| 2020-27 | 7-27-2020 11-3-2020(Elect.) | 2 | 3.06(e) |
| 2020-28 | 7-27-2020 11-3-2020(Elect.) | 2 | 3.03 |
| | 11-3-2020(Elect.) | | 3.01—3.07 |
| 2021-19 | 7-19-2021 11-2-2021(Elect.) | 2 | 3.03 |

Groveland, Florida, Code of Ordinances
(Supp. No. 16)

Created: 2025-02-11 11:19:40 [EST]

Page 8 of 8



# City of Groveland

# Code of Ethics and Conduct
### For
# Elected and Appointed Officials

*"Always do right. This will gratify some people and*
*astonish the rest."*
*-- Mark Twain*

**Policy Purpose**

The Groveland City Council adopts this Code of Ethics and Conduct to assure that all elected and appointed officials, while exercising their office, conduct themselves in a manner that will instill public confidence and trust in the fair operation and integrity of Groveland's City government.

## A. **ETHICS**

The citizens and businesses of Groveland are entitled to have fair, ethical and accountable local government. To this end, the public should have full confidence that their elected and appointed officials:

- Comply with both the letter and spirit of the laws and policies affecting the operations of government;
- Are independent, impartial and fair in their judgment and actions;
- Use their public office for the public good, not for personal gain; and
- Conduct public office deliberations and processes openly, unless required by law to be confidential, in an atmosphere of respect and civility.

Therefore, members of the City Council, and of all Boards, Committees and Commissions shall conduct themselves in accordance with the following ethical standards:

1. **Act in the Public Interest.** Recognizing that stewardship of the public interest must be their primary concern, members will work for the common good of the people of Groveland and not for any private or personal interest, and they will assure fair and equal treatment of all persons, claims and transactions coming before them.

2. **Comply with both the spirit and the letter of the Law and City Policy.** Members shall comply with the laws of the nation, the State of Florida and the City of Groveland in the performance of their public duties.

3. **Conduct of Members.** The professional and personal conduct of members while exercising their office must be above reproach and avoid even the appearance of impropriety. Members shall refrain from abusive conduct, personal charges or verbal attacks upon the character or motives of other members of Council, Boards, Committees and Commissions, the staff or public.

4. **Respect for Process.** Members shall perform their duties in accordance with the processes and rules of order established by the City Council.

5. **Conduct at Public Meetings.** Members shall prepare themselves for public issues; listen courteously and attentively to all public discussions before the body; and focus on the business at hand.

6. **Decisions Based on Merit.** Members shall base their decisions on the merits and substance of the matter at hand, rather than on unrelated considerations. When making adjudicative decisions (those decisions where the member is called upon to determine and apply facts peculiar to an individual case), members shall maintain an open mind until the conclusion of the hearing on the matter and shall base their decisions on the facts presented at the hearing and the law.

1

7. **Communication.** For adjudicative matters pending before the body, members shall refrain from receiving information outside of an open public meeting or the agenda materials, except on advice of the City Attorney.  Members shall publicly disclose substantive information that is relevant to a matter under consideration by the body which they may have received from sources outside of the public decision-making process.

8. **Conflict of Interest.** In order to assure their independence and impartiality on behalf of the common good and compliance with conflict of interest laws, members shall use their best efforts to refrain from creating an appearance of impropriety in their actions and decisions. Members shall not use their official positions to influence government decisions in which they have (a) a material financial interest, (b) an organizational responsibility or personal relationship which may give the appearance of a conflict of interest, or (c) a strong personal bias.

    A member who has a potential conflict of interest regarding a particular decision shall disclose the matter to the City Attorney and reasonably cooperate with the City Attorney to analyze the potential conflict.

9. **Gifts and Favors.** Members shall not take any special advantage of services or opportunities for personal gain, by virtue of their public office that is not available to the public in general. They shall refrain from accepting any gifts, favors or promises of future benefits which might compromise their independence of judgment or action or give the appearance of being compromised.

10. **Confidential Information.** Members must maintain the confidentiality of all written materials and verbal information provided to members which is confidential or privileged. Members shall neither disclose confidential information without proper legal authorization, nor use such information to advance their personal, financial or other private interests.

11. **Representation of Private Interests.** In keeping with their role as stewards of the public interest, members of Council shall not appear on behalf of the private interests of third parties before the Council or any Board, Committee, Commission or proceeding of the City, nor shall members of Boards, Committees and Commissions appear before their own bodies or before the Council on behalf of the private interests of third parties on matters related to the areas of service of their bodies.

12. **Advocacy.** Members shall represent the official policies or positions of the City Council, Board, Committee or Commission to the best of their ability when designated as delegates for this purpose. When presenting their individual opinions and positions, members shall explicitly state they do not represent their body or the City of Groveland, nor will they allow the inference that they do. Councilmembers and Board, Committee and Commission members have the right to endorse candidates for all Council seats or other elected offices. It is inappropriate to mention or display endorsements during Council meetings, or Board, Committee and Commission meetings, or other official City meetings.

2

13. **Policy Role of Members.** Members shall respect and adhere to the council-manager structure of Groveland City government as outlined in the Groveland City Charter and Code. In this structure, the City Council determines the policies of the City with the advice, information and analysis provided by City staff, Boards, Committees and Commissions, and the public. Except as provided by the City Charter, members shall not interfere with the administrative functions of the City or the professional duties of City staff; nor shall they impair the ability of staff to implement Council policy decisions.

14. **Independence of Boards, Committees and Commissions.** Because of the value of the independent advice of Boards, Committees and Commissions to the public decision-making process, members of Council shall refrain from using their position to unduly influence the deliberations or outcomes of Board, Committee and Commission proceedings.

15. **Positive Work Place Environment.** Members shall support the maintenance of a positive and constructive work place environment for City employees and for citizens and businesses dealing with the City. Members shall recognize their special role in dealings with City employees to in no way create the perception of inappropriate direction to staff.


**B.**   **CONDUCT GUIDELINES**

The Conduct Guidelines are designed to describe the manner in which elected and appointed officials should treat one another, City staff, constituents, and others they come into contact with while representing the City of Groveland.

1. **Elected and Appointed Officials' Conduct with Each Other in Public Meetings**

Elected and appointed officials are individuals with a wide variety of backgrounds, personalities, values, opinions, and goals. Despite this diversity, all have chosen to serve in public office in order to preserve and protect the present and the future of the community. In all cases, this common goal should be acknowledged even though individuals may not agree on every issue.

(a)   *Honor the role of the chair in maintaining order*

It is the responsibility of the chair to keep the comments of members on track during public meetings. Members should honor efforts by the chair to focus discussion on current agenda items. If there is disagreement about the agenda or the chair's actions, those objections should be voiced politely and with reason, following procedures outlined in parliamentary procedure.

3

(b) *Practice civility and decorum in discussions and debate*
Difficult questions, tough challenges to a particular point of view, and criticism of ideas and information are legitimate elements of debate by a free democracy in action. Free debate does not require nor justify, however, public officials to make belligerent, personal, impertinent, slanderous, threatening, abusive, or disparaging comments.

(c) *Avoid personal comments that could offend other members*
If a member is personally offended by the remarks of another member, the offended member should make notes of the actual words used and call for a "point of personal privilege" that challenges the other member to justify or apologize for the language used. The chair will maintain control of this discussion.

(d) *Demonstrate effective problem-solving approaches*
Members have a public stage and have the responsibility to show how individuals with disparate points of view can find common ground and seek a compromise that benefits the community as a whole.

## 2.   **Elected and Appointed Officials' Conduct with the Public in Public Meetings**

Making the public feel welcome is an important part of the democratic process. No signs of partiality, prejudice or disrespect should be evident on the part of individual members toward an individual participating in a public forum. Every effort should be made to be fair and impartial in listening to public testimony.

(a) *Be welcoming to speakers and treat them with care and gentleness.*
While questions of clarification may be asked, the official's primary role during public testimony is to listen.

(b) *Be fair and equitable in allocating public hearing time to individual speakers.*
The chair will determine and announce limits on speakers at the start of the public hearing process.

(c) *Practice active listening*
It is disconcerting to speakers to have members not look at them when they are speaking. It is fine to look down at documents or to make notes, but reading for a long period of time or gazing around the room gives the appearance of disinterest. Members shall try to be conscious of facial expressions, and avoid those that could be interpreted as "smirking," disbelief, anger or boredom.

(d) *Maintain an open mind*
Members of the public deserve an opportunity to influence the thinking of elected and appointed officials.

(e) *Ask for clarification, but avoid debate and argument with the public*
Only the chair – not individual members – can interrupt a speaker during a presentation. However, a member can ask the chair for a point of order if the speaker is off the topic or exhibiting behavior or language the member finds disturbing.

4

3. **Elected and Appointed Officials' Conduct with City Staff**

Governance of a City relies on the cooperative efforts of elected officials, who set policy, appointed officials who advise the elected, and City staff who implement and administer the Council's policies. Therefore, every effort should be made to be cooperative and show mutual respect for the contributions made by each individual for the good of the community.

(a) *Treat all staff as professionals*
Clear, honest communication that respects the abilities, experience, and dignity of each individual is expected. Poor behavior towards staff is not acceptable.

(b) *Do not disrupt City staff from their jobs*
Elected and appointed officials should not disrupt City staff while they are in meetings, on the phone, or engrossed in performing their job functions in order to have their individual needs met. Do not attend City staff meetings unless requested by staff – even if the elected or appointed official does not say anything, his or her presence implies support, shows partiality, may intimidate staff, and hampers staff's ability to do their job objectively.

(c) *Never publicly criticize an individual employee*
Elected and appointed officials should never express concerns about the performance of a City employee in public, to the employee directly, or to the employee's manager. Comments about staff performance should only be made to the City Manager through private correspondence or conversation.

(d) *Do not get involved in administrative functions*
Elected and appointed officials acting in their individual capacity must not attempt to influence City staff on the making of appointments, awarding of contracts, selecting of consultants, processing of development applications, or granting of City licenses and permits.

(e) *Do not solicit political support from staff*
Elected and appointed officials should not solicit any type of political support (financial contributions, display of posters or lawn signs, name on support list, etc.) from City staff. City staff may, as private citizens with constitutional rights, support political candidates but all such activities must be done away from the workplace.

(f) *No Attorney-Client Relationship*
Members shall not seek to establish an attorney-client relationship with the City Attorney, including his or her staff and attorneys contracted to work on behalf of the City. The City Attorney represents the City and not individual members. Members who consult with the City Attorney cannot enjoy or establish an attorney-client relationship with the attorney.

4. **Council Conduct with Boards, Committees and Commissions**

The City has established several Boards, Committees and Commissions as a means of gathering more community input. Citizens who serve on Boards, Committees and Commissions become more involved in government and serve as advisors to the City Council. They are a valuable resource to the City's leadership and should be treated with appreciation and respect.

(a) *If attending a Board, Committee or Commission meeting, be careful to only express personal opinions*
Councilmembers may attend any Board, Committee or Commission meeting, which are always open to any member of the public. However, they should be sensitive to the way their participation – especially if it is on behalf of an individual, business or developer – could be viewed as unfairly affecting the process. Any public comments by a Councilmember at a Board, Committee or Commission meeting should be clearly made as individual opinion and not a representation of the feelings of the entire City Council.

(b) *Limit contact with Board, Committee and Commission members to questions of clarification*
It is inappropriate for a Councilmember to contact a Board, Committee or Commission member to lobby on behalf of an individual, business, or developer, and vice versa. It is acceptable for Councilmembers to contact Board, Committee or Commission members in order to clarify a position taken by the Board, Committee or Commission.

(c) *Respect that Boards, Committees and Commissions serve the community, not individual Councilmembers*
The City Council appoints individuals to serve on Boards, Committees and Commissions, and it is the responsibility of Boards, Committees and Commissions to follow policy established by the Council. But Board, Committee and Commission members do not report to individual Councilmembers, nor should Councilmembers feel they have the power or right to threaten Board, Committee and Commission members with removal if they disagree about an issue. Appointment and re-appointment to a Board, Committee or Commission should be based on such criteria as expertise, ability to work with staff and the public, and commitment to fulfilling official duties. A Board, Committee or Commission appointment should not be used as a political "reward."

(d) *Be respectful of diverse opinions*
A primary role of Boards, Committees and Commissions is to represent many points of view in the community and to provide the Council with advice based on a full spectrum of concerns and perspectives. Councilmembers may have a closer working relationship with some individuals serving on Boards, Committees and Commissions, but must be fair and respectful of all citizens serving on Boards, Committees and Commissions.

(e) *Keep political support away from public forums*
Board, Committee and Commission members may offer political support to a Councilmember, but not in a public forum while conducting official duties. Conversely, Councilmembers may support Board, Committee and Commission members who are running for office, but not in an official forum in their capacity as a Councilmember.

## C. <u>SANCTIONS</u>

(a) *Acknowledgement of Code of Ethics and Conduct*
Councilmembers who do not sign an acknowledgement that they have read and understand the Code of Ethics and Conduct shall be ineligible for intergovernmental assignments or Council subcommittees. Board, Committee and Commission members who do not sign an acknowledgement that they have read and understand the Code of Ethics and Conduct are not eligible to hold office.

(b)   *Ethics Training for Local Officials*
Councilmembers, Board, Committee and Commission Members who are out of compliance with State or City mandated requirements for ethics training are not eligible to hold office and shall not represent the City on intergovernmental assignments or Council subcommittees, and may be subject to sanctions.

(c)   *Behavior and Conduct*
The Groveland Code of Ethics and Conduct expresses standards of ethical conduct expected for members of the Groveland City Council, Boards, Committees and Commissions. Members themselves have the primary responsibility to assure that ethical standards are understood and met, and that the public can continue to have full confidence in the integrity of government. The chairs of Boards, Committees and Commissions and the Mayor and Council have the additional responsibility to report to the city manager when actions of members that appear to be in violation of the Code of Ethics and Conduct are brought to their attention.

Councilmembers:

Councilmembers who intentionally and/or repeatedly do not follow proper conduct may be reprimanded or formally censured by the Council, lose seniority or committee assignments (both within the City of Groveland and with intergovernmental agencies) or other privileges afforded by the Council. Serious infractions of the Code of Ethics or Code of Conduct could lead to other sanctions as deemed appropriate by the Council as set forth in the Charter.

Individual Councilmembers should point out to the offending Councilmember perceived infractions of the Code of Ethics and Conduct. If the offenses continue, then the matter should be referred to the Mayor during a public meeting, or Vice Mayor during a public meeting. If the Mayor is the individual whose actions are being questioned, then the matter should be referred to the Vice Mayor. It is the responsibility of the Mayor (or Vice Mayor) to initiate action if a Councilmember's behavior may warrant sanction.

Board, Committee and Commission Members:

Counseling, verbal reprimands and written warnings may be administered by the City Manager to Board, Committee and Commission members failing to comply with City policy. These lower levels of sanctions shall be kept private to the degree allowed by law. Copies of all written reprimands administered by the City Manager shall be distributed in memo format to the chair of the respective Board, Committee or Commission, the City Clerk, the City Attorney, and the City Council.

The City Council may impose sanctions on Board, Committee and Commission members whose conduct does not comply with the City's policies, up to and including removal from office. Any form of discipline imposed by Council shall be determined by a majority vote of at least a quorum of the Council at a noticed public meeting and such action shall be preceded by a Report to Council with supporting documentation.

When deemed warranted, the majority of Council may call for an investigation of Board, Committee or Commission member conduct. Also, should the City Manager or City Attorney believe an investigation is warranted, they shall confer with the Council. The Council shall ask the City Manager or the City Attorney to investigate the allegation and report the findings.

## D. **IMPLEMENTATION**

The Code of Ethics and Conduct is intended to be self-enforcing and is an expression of the standards of conduct for members expected by the City. It therefore becomes most effective when members are thoroughly familiar with it and embrace its provisions.

For this reason, this document shall be included in the regular orientations for candidates for City Council, applicants to Board, Committee and Commissions, and newly elected and appointed officials. Members entering office shall sign a statement (example below) acknowledging they have read and understand the Code of Ethics and Conduct. In addition, the Code of Ethics and Conduct shall be periodically reviewed by the City Council, Boards, Committees and Commissions, and updated as necessary.

**Example:**

> *I affirm that I have read and understand the City of Groveland Code of Ethics and Conduct for Elected and Appointed Officials and agree to comply with the City of Groveland Code of Ethics and Conduct for Elected and Appointed Officials.*
>
> _____            _____
> Signature                                                    Date

**From: Accurate Serve Ocala** serve@accurateserveocala.com
**Subject:** Job Completed O250661 (CITY OF GROVELAND C/O CITY MANAGER or MAYOR)
**Date:** July 9, 2025 at 2:40 PM
**To:** anthony@sabatinilegal.com

AO

This is an automated status email:
From: ACCURATE SERVE OF OCALA
To: Sabatini Law Firm, P.A.
Job # O250661
Serve To: **CITY OF GROVELAND C/O CITY MANAGER or MAYOR**
Case Info:
Court: CIRCUIT COURT
Court Case # **35-2025-CA-001424-AXXX-01**

Re: PLAINTIFF
JUDITH FIKE, a City Councilmember,
-Versus-
Re: DEFENDANT
CITY OF GROVELAND, a political sub-division of the State of Florida,

Service Info:
Recipient was SERVED on **7/9/2025** at **02:10 PM**
Server Name: George Hanzimanolis
Type of Service: 2. CORPORATE
Name of Served: KEITH KEOGH
Capacity: MAYOR

Description:Gender: Male , Approximate Weight: 240 , Approximate Age: 72 , Race: White-Caucasian , Hair: Gray , Height: 5'9"

Documents: SUMMONS; VERIFIED EMERGENCY COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF; VERIFIED MOTION FOR PRELIMINARY INJUNCTION; EXHIBITS

Service Address: 156 S Lake Ave Groveland, FL 34736
Lon: -81.856254 Lat:28.560471

Service Comments:

THANK YOU FOR CHOOSING ACCURATE SERVE OCALA!

# VERIFIED RETURN OF SERVICE

Job # O250661

**Client Info:**

Sabatini Law Firm, P.A.
Anthony Sabatini
411 N Donnelly Street, Suite #313
Mount Dora, FL  32757

**Case Info:**

| | |
|---|---|
| **PLAINTIFF:** | CIRCUIT COURT |
| JUDITH FIKE, a City Councilmember, | |
|  -versus- | County of Lake, Florida |
| **DEFENDANT:** | Court Case # **35-2025-CA-001424-AXXX-01** |
| CITY OF GROVELAND, a political sub-division of the State of Florida, | |

**Service Info:**

**Received by George Hanzimanolis: on July, 9th 2025 at 11:29 AM**
**Service:** I Served **CITY OF GROVELAND C/O CITY MANAGER or MAYOR**
With: **SUMMONS; VERIFIED EMERGENCY COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF; VERIFIED MOTION FOR PRELIMINARY INJUNCTION; EXHIBITS**
by leaving with **KEITH KEOGH, MAYOR**

**At BUSINESS 156 S LAKE AVE GROVELAND, FL 34736**
Latitude: **28.560471**,   Longitude: **-81.856254**

On **7/9/2025** at **02:10 PM**
**Manner of Service: 2. CORPORATE**
CORPORATE SERVICE: F.S. 48.081 (1)(a)(b)(c)(d), (2) or (3)

**Served Description:  (Approx)**

Age: **72**, Sex: **Male**, Race: **White-Caucasian**, Height: **5' 9"**, Weight: **240**, Hair: **Gray** Glasses:  **Yes**

I **George Hanzimanolis** acknowledge that I am 18 years or older, authorized to serve process, in good standing in the jurisdiction wherein the process was served, and I have no interest in the above action. Under penalties of perjury, I declare that I have read the foregoing document and that the facts stated in it are true.

**George Hanzimanolis**
Lic # **101819-15**

**ACCURATE SERVE OF OCALA**
3101 SW 34th AVE
SUITE 905, UNIT 401
Ocala, FL 34474
Phone: (352) 278-2188

Our Job # **O250661**




1 of 1